**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KIM Y. MACK, *Plaintiff*, v. THE TOWN OF MORRISTOWN, et al., *Defendants*. | Civil Action No. 15-2946 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter is before the Court on Defendant The Housing Authority of the Town of Morristown's ("MHA") motion for summary judgment. Dkt. No. 23. In this disability discrimination case, Plaintiff Kim Mack, who suffers from diabetes and foot issues, claims that MHA failed to grant her a reasonable accommodation when it denied her request to delay her transfer from one rental unit to another. MHA moves for summary judgment on the grounds that her claims are time-barred and her request was neither necessary nor reasonable. The Court finds that all claims except one are time-barred, and fact issues preclude summary judgment on the remaining claim. The motion is **GRANTED IN PART** and **DENIED IN PART**.

**I. BACKGROUND**

In April 2011, Mack and her two daughters moved from Virginia to a three-bedroom townhouse in Morristown, New Jersey.[1] She leased the unit from MHA, a housing authority that provides public housing to residents in Morristown. Although she signed a lease for that unit,

---

[1] Unless stated otherwise, the following facts are taken from the undisputed portions of MHA's Local Civil Rule 56.1(a) Statement of Material Facts. See L.Civ.R. 56.1(a); R.56 Stmt., Dkt. No. 23-9. This includes statements that Mack contests without citing to evidence that establishes a genuine factual dispute.

MHA had the power to transfer her to a smaller unit if a "decrease in family size creates . . . the underutilization of [her current] unit." Gross Aff. Ex. 1, Lease §§ 4(c), 16(i). If that happened, she would have 30 days to change apartments. Id. § 4(c). She could dispute the transfer by filing a grievance and participating in an internal review process. See id. § 13.

In October 2011, Mack's daughters told MHA that she "threw them out" of the house. They moved back to Virginia, leaving Mack by herself in the three-bedroom unit.

In February 18, 2013, Mack stepped on a nail, injuring the third toe on her left foot. She was treated in the emergency room at Morristown Medical Center. Harrison Cert. Ex. F, Medical Records from Morristown Medical Center ("MMC Records") at 8, Dkt. No. 23-3. Mack left the hospital that day with instructions to clean and treat the cut. Id. at 9.

A week later, on February 25, she visited her podiatrist, Dr. Angelo Del Priore, for follow-up treatment on her toe. Dr. Del Priore noted that her emergency room exams did not reveal an infection "at that time" but that she now had an ulcer and "erythematous and edema to the base of the 3rd toe." Harrison Cert. Ex. J, Medical Records from Dr. Angelo Del Priore, D.P.M. ("Del Priore Records"), at 1, Dkt. No. 23-3. Dr. Del Priore's records indicate that he told Mack to return for another follow-up in a week. Id. at 2. When Mack did not schedule the visit, Dr. Del Priore noted that he called her to come back in because she had a staph infection. Id. Mack declined, saying her "toe was doing better and [she] felt no rush to come in." Id.

On March 13, roughly a year and a half after Mack's daughters moved out, MHA sent Mack a written notice to transfer units. The letter stated that MHA was transferring her to a one-bedroom unit down the street due to the change in her family composition. Gross Aff. Ex. 3, Notice of Transfer Letter dated March 13, 2013 at 1, Dkt. No. 23-3. According to the letter, she had to move on April 15. Id. If she did not agree to move, the letter stated that MHA would

terminate her lease and could evict her. Id. The letter also explained that she had the right to contest the transfer under MHA's grievance procedures, and she would not have to move during the pendency of that process. Id. at 2.

Soon after receiving the letter, Mack spoke with her assigned MHA contact, Assistant Protect Manager Cynthia Sargent, to seek additional time to move out. Mack says she spoke with Sargent "several times," though her deposition testimony, which is largely disjointed, does not indicate when they spoke or the specifics of their conversations. Harrison Cert. Ex. E, Deposition of Kim Mack ("Dep. Tr.") 132:13-18, Dkt. No. 23-3. For example, Mack stated in her deposition that she first requested an extension from Sargent sometime in March and gave Sargent a letter from her doctor; but Mack does not say when that meeting occurred or remember what the letter said. Dep. Tr. 117:20-120:9. At some point, Sargent told Mack that "she thought she would be able to give [Mack] more time," but she would let Mack know. Dep. Tr. 125:4-10. At another point—again, Mack does not say when—Mack asked for "at least a couple of months" of extra time "because that's what [her doctor] said. My foot needed a couple months to heal." Dep. Tr. 125:19-22.

On April 8, 2013 Mack spoke with a new doctor, Dr. Felsen, who provided Mack a second letter. Dep. Tr. 121:18-21, 137:9-138:3. The letter stated:

> Ms. Kim Mack . . . is an established patient of our office. She has a history of insulin dependent type 2 diabetes, with associated Charcot deformity of her right foot and severe peripheral neuropathy (numbness in both legs). She also has a history of multiple diabetic ulcers on both feet. Ms. Mack will need surgery for her right foot and also follows regularly with a podiatrist. As a result of her medical conditions, she should not have to move at this time. If there are any questions, please call our office . . . .

Ex. D Attachment, Letter dated April 8, 2013 ("Felsen Letter"). Mack gave Sargent the Felsen Letter. Dep. 123:13-19. Sargent responded the same day (April 8) that MHA would grant Mack

a two-week extension on the April 15 move-out day, allowing her to move on April 29.  Dep. Tr. 124:16-125:3.  Mack said that would not be enough time, but Sargent said there was "nothing she could do" to push the move date any farther; Mack had to be out by the 29th.  Dep. Tr. 124:23-125:3, 125:15-19.  Mack did not request a hearing, despite reading the original notice of transfer letter's grievance procedures, because she "thought it was pointless."  Dep. Tr. 132:19-134:6.

That same day, Mack visited Dr. Del Priore again, who noted that her third toe was still infected but "resolving," and that Mack "never went for an MRI as instructed by her medical doctor."  Del Priore Records at 2.  He scheduled a follow-up appointment with her, but she missed it again.  Id.

Mack moved out of her townhouse the last weekend in April.  She could not afford a moving company, so she sought help from her family.  Dep. Tr. 147:2-19.  On Friday, April 26, her father and his friend moved the large items to her new unit located a little over 500 feet away.  They were not available the next two days, leaving Mack alone to carry over the smaller items by foot, which required her to make 20 to 30 trips on Saturday and Sunday.  Dep. Tr. 153:8-154:23.  On Monday, April 29, 2013, Mack turned in the keys to her old unit.  Dep. Tr. 146:14-21.

On May 16, 2013, a month and a half since her last visit and two weeks since moving out, Mack returned to Dr. Del Priore.  He noticed that the infection in her third toe increased and the tip of the toe was necrotic, with a "[d]arkening pre-gangrenous appearance."  Del Priore Records at 2.  He sent Mack to the emergency room.  Two days later, Mack underwent surgery to partially amputate her third toe.  Culture swabs of the toe returned positive for MRSA, a bacterial staph infection.  She was discharged with a diagnosis of uncontrolled diabetes and MRSA.  Her discharge papers noted that Mack had issues with the toe "since the middle of March in 2013," she

4

"was not compliant with office visit instructions"; and she "was supposed to get an MRI of the foot which was not done." MMC Records at 1.

Mack filed this lawsuit against MHA on April 27, 2015—over two years since the final meeting with Sargent on April 8, 2013, but under two years since Mack gave up her apartment on April 29, 2013. Dkt. No. 1. She asserted claims under (1) negligence; (2) the Federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, et seq.; (3) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq.; (4) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); (5) the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12(g)(2) and the administrative rules promulgated thereunder, N.J.A.C. § 13:13-3.4(f)(2); and (6) intentional infliction of emotional distress. The claims stem from the same basic allegations: MHA discriminated against Mack based on her disability by failing to grant her a reasonable accommodation to move out later than April 29, 2013.

MHA filed the instant motion for summary judgment. In her opposition papers, Mack agreed to dismiss the negligence, ADA, and intentional infliction claims. Opp'n Br. at 2, Dkt. No. 24. Only the FHA, Rehabilitation Act, and NJLAD claims remain.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and

5

inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

### III. ANALYSIS

MHA moves for summary judgment on the FHA, Rehabilitation Act, and NJLAD claims because (1) the claims are time-barred; (2) the requested accommodation was not necessary or reasonable; (3) Mack has not provided expert testimony to support her theory that her injury was caused by the denial of accommodations; and (4) MHA did not engage in sufficiently egregious conduct to support punitive damages. The Court will address each in turn.

#### A. Statute of Limitations

First, MHA argues that the FHA, Rehabilitation Act, and NJLAD claims are barred by the relevant two-year statutes of limitations. They argue that the limitations periods accrued on April 8, 2013 when MHA denied Mack's request, and therefore the claims are untimely. The Court agrees, but only for the FHA and Rehabilitation Act claims (i.e., the federal claims).

All three statues have the same two-year limitations period. "The FHA explicitly sets forth a two-year statute of limitations." Braun v. Gonzales, 557 F. App'x 176, 179 (3d Cir. 2014) (citing 42 U.S.C. § 3613(a)(1)(A)) ("An aggrieved person may commence a civil action . . . not later than 2 years after the occurrence or termination of an alleged discriminatory housing practice . . . ."). The Rehabilitation Act and NJLAD are governed by New Jersey's two-year statute of limitations for personal injury actions. N.J. Stat. Ann. § 2A:14-2(a); see also Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth., 539 F.3d 199, 208 (3d Cir. 2008) (explaining application of state statute of limitations period to Rehabilitation Act claims); D.G. v. Somerset Hills Sch. Dist., 559 F. Supp. 2d 484, 495 n.4 (D.N.J. 2008) (applying 2 year limitations period to Rehabilitation Act and NJLAD claims).

The key dispute here is when the statute of limitations began to run for the FHA, Rehabilitation Act, and NJLAD claims. Because the federal and state claims accrue at different times, the Court will address them separately.[2]

MHA has identified the correct accrual date for the federal claims. In <u>Delaware State College v. Ricks</u>, 449 U.S. 250, 258 (1980) and <u>Chardon v. Fernandez</u>, 454 U.S. 6, 8 (1981) the Supreme Court explained that discrimination claims under federal law accrue at "the time of the discriminatory act, not the point at which the consequences of the act become painful." <u>Chardon</u>, 454 U.S. at 8. So for example, in <u>Chardon</u>, the plaintiffs' wrongful termination claim accrued on the date the employer told the plaintiffs they were going to be fired, not on the date the plaintiffs were actually fired, because the illegal act was the decision to fire the plaintiffs, not the firing itself. <u>Id.</u> at 7-8.

The same reasoning applies here. The thrust of Mack's FHA and Rehabilitation Act claims are the same: Morristown should have accommodated Mack's disability by granting her more time to move. The operative illegal act, as understood by <u>Chardon</u> and <u>Ricks</u>, was MHA's decision to deny her request to delay the move. Since Sargent told Mack about MHA's final decision on April 8, 2013, that is when the federal claims accrued.

Mack responds that MHA's decision did not become final on April 8 because she and MHA continued to discuss delaying the move after that date. Opp'n Br. at 4 (citing Compl. ¶ 16). But her argument is not supported by evidence. In support of her claim that their discussions continued, she cites to her Complaint, which was not a verified or sworn document; to her deposition testimony that she spoke with Sargent "several times," but it does not say when; and to her

---

[2] Although the Rehabilitation Act claim borrows the statute of limitation from state law, "the accrual date is a matter of federal law." <u>Disabled in Action</u>, 539 F.3d at 209 (quoting <u>Romero v. Allstate Corp.</u>, 404 F.3d 212, 221 (3d Cir. 2005)).

Responsive Rule 56.1 statement, but the relevant paragraph does not cite to anything at all. See Opp'n Br. at 4-5; Resp. R.56 Stmt ¶¶ 8-9, Dkt. No. 25. There also is no evidence that MHA reached out to her after April 8 to say they were willing to reconsider the move date. Rather, Mack's deposition testimony states that Sargent said on April 8 there was nothing more she could do. Mack has therefore failed to create a fact issue over whether the federal claims accrued on April 8. Since Mack filed this action more than two years later, the FHA and Rehabilitation Act claims are time-barred.

The accrual date for the NJLAD claim is less clear. NJLAD claims accrue on the occurrence of the "complained-of discriminatory act." Roa v. Roa, 200 N.J. 555, 566 (2010). MHA claims that the rule in Ricks and Chardon applies to the NJLAD claim, just as it did for the FHA and Rehabilitation Act claims above. That is, they argue that the "complained-of discriminatory act" was the decision to deny the second extension on April 8, not the fact that she had to move on April 29. The Court disagrees.

MHA contends that the Ricks and Chardon apply to the NJLAD claim because the New Jersey Supreme Court has "adopted the federal framework for determining when an NJLAD claim accrues." Def.'s Br. at 5. That is true for most NJLAD issues, but it is not always so. As the New Jersey Supreme Court has stated, "federal case law is merely a guide" for analyzing NJLAD claims, it is not dispositive. Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 20 (2002); see also State v. Cooke, 163 N.J. 657, 670 (2000) ("Although federal decisional law may serve to guide us in our resolution of New Jersey issues, we bear ultimate responsibility for the safe passage of our ship.") (internal citation omitted). That means that the rule in Ricks and Chardon *could* apply to NJLAD claims, but only if the New Jersey Supreme Court explicitly says so.

It does not appear that the Supreme Court has. MHA has not provided any decision by the high court that expressly adopts Ricks and Chardon for NJLAD claims in general or under the specific failure to accommodate provisions asserted here, N.J.S.A. § 10:5-12(g)(2) and N.J.A.C. § 13:13-3.4(f)(2). In support of its argument, MHA cites to Roa, 200 N.J. at 568. But Roa does not support the proposition that Ricks and Chardon apply here. Rather, in that case, the New Jersey Supreme Court explained why it adopted the United States Supreme Court's analysis of continuing violations under Title VII for NJLAD claims. Id. at 567-68 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)). And the Roa decision does not discuss Ricks or Chardon at all.

Absent a binding decision on point, the Court must predict whether the New Jersey Supreme Court would apply Ricks and Chardon to the instant NJLAD claims. The Court predicts that it would not. The few times New Jersey courts addressed this particular federal accrual rule, they expressed disagreement. In Alderiso v. Med. Ctr. of Ocean County, Inc., 167 N.J. 191, 199-200 (2001), for example, the state Supreme Court rejected the application of Ricks and Chardon to a wrongful discharge claim under New Jersey Conscientious Employee Protection Act ("CEPA"), finding the accrual date was the day the employee received her last pay check, not the earlier date she was told she would be fired. The court found Ricks and Chardon unpersuasive, and the later accrual date a more "sensible" rule, because "[p]rior to that date, the allegedly wrongful act is subject to change; more importantly, the effective discharge date is the date which can normally be identified with the least difficulty or dispute." Id. at 201-02 (quoting Ricks, 449 U.S. at 265 (Stevens, J., dissenting)).

The New Jersey Superior Court, Appellate Division, rejected Ricks and Chardon in a fraud case for similar reasons, stating that the federal accrual rule was "arbitrary," encouraged needless

9

litigation when the decision could be reversed or reconsidered, and resulted in "tortuous" determinations about what the plaintiff knew and when. Holmin v. TRW, Inc., 330 N.J. Super. 30, 46 (App. Div. 2000). The court further stated that accrual based on the date of termination "conforms with a basic proposition of our law: a cause of action accrues when a plaintiff has been injured or damaged. Prior to that date, he or she is faced only with an anticipation of possible injury, which may or may not occur, depending upon whether the employee is actually terminated." Id. That decision was unanimously affirmed by the New Jersey Supreme Court in a brief per curiam decision. Holmin v. TRW, Inc., 167 N.J. 205, 205 (2001) (per curiam).

These cases strongly suggest that the rule in Ricks and Chardon would not apply to Mack's NJLAD claim.[3] Those cases concern discrimination in the employment—not housing—context, but they express a generally applicable proposition: New Jersey courts are not persuaded by the federal case law's focus on the date of the discriminatory decision as the moment of accrual. Based on practical considerations and the broad remedial purpose of NJLAD, discrimination claims accrue when the discriminatory decision causes damage. As such, the Court will assume that NJLAD claims like this one for failure to provide reasonable accommodations accrue on the day

---

[3] One case cuts the other way, but it does not compel a contrary result. In Hanani v. State of New Jersey Department of Environmental Protections, the Third Circuit applied Chardon to an NJLAD denial of promotion claim in a non-precedential opinion. 205 F. App'x 71, 76 (3d Cir. 2006) (internal citations omitted); see also In re Grand Jury Investigation, 445 F.3d 266, 276 (3d Cir. 2006) (explaining persuasive but non-binding value of cases published in Federal Appendix). There, the court held that the statute began to run on federal and NJLAD claims when the plaintiff was told she would not be promoted, not when the position was given to someone else. Id. But it does not appear that the plaintiff in that case raised the argument Mack asserts here—i.e., that NJLAD claims accrue at a different date than the federal claims—so the court treated the claims the same. Moreover, the main case on which Hanani relied, Miller v. Beneficial Management, discussed accrual dates for federal claims only. See 997 F.2d 834, 841 & n.3, 842-43 (3d Cir. 1992) (addressing only ADEA, Title VII, and EPA claims because district court dismissed CEPA and NJLAD claims on supplemental jurisdiction grounds without reaching them). As such, this Court's decision is not incompatible with Hanani.

the plaintiff was forced to leave her house, not on the earlier date when the defendant denied the request to stay longer.

Applying that rule here, the NJLAD claim is timely. Including the two-week extension, Mack had to be out of her apartment by April 29, 2013. She turned in her keys to her old unit on that day. Mack Dep. 146:17-21. She filed this lawsuit on April 27, 2015, just short of two years later. Her NJLAD claim can proceed.

### B. NJLAD Claim

NJLAD prohibits discrimination by a public entity on the basis of a tenant's disability. N.J.S.A. § 10:5-12(g)(2); Oras v. Hous. Auth. of City of Bayonne, 373 N.J. Super. 302, 311 (App. Div. 2004). The statute is "construed liberally . . . to insure that handicapped persons will have 'full and equal access to society, limited only by physical limitations they cannot overcome.'" Franek v. Tomahawk Lake Resort, 333 N.J. Super. 206, 217 (App. Div. 2000) (internal citation omitted). The Administrative Code accompanying the act makes it unlawful for any person to "[r]efuse to make reasonable accommodations in rules, policies, practices or services . . . when such accommodations or modifications may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling." N.J.A.C. § 13:13–3.4(f)(2).

"A handicapped tenant alleging a wrongful denial of a requested accommodation bears the initial burden of showing that the requested accommodation is or was necessary to afford him or her an equal opportunity to use and enjoy a dwelling." Oras, 373 N.J. Super. at 312 (citing Lapid–Laurel, L.L.C. v. Zoning Bd. of Adjustment of the Twp. of Scotch Plains, 284 F.3d 442, 457 (3d Cir. 2002)). If such a showing is made, "the burden of proof shifts to the landlord to show that the requested accommodation is or was unreasonable." Id. (internal citation omitted).

Despite the broad protections afforded by NJLAD, the statute does not create an "obligation to do everything possible to accommodate such a person." Estate of Nicholas v. Ocean Plaza, 388 N.J. Super. 571, 588 (App. Div. 2006). "[C]ost (to the defendant) and benefit (to the plaintiff) merit consideration as well." Oras, 373 N.J. Super. at 315 (internal citation omitted).

Under this framework, Mack has created a dispute of material fact sufficient to survive summary judgment. First, fact issues preclude finding her request was unnecessary. The parties agree that Mack supplied MHA with a letter from Dr. Felsen, stating that some sort of an extension was necessary because she could not move "at this time" on account of several debilitating foot issues. See Felsen Letter at 1. But MHA and Mack interpret "at this time" differently. MHA claims that the Dr. Felsen's letter entitled Mack only to two more weeks after April 15 at most, not the right to stay until her feet healed entirely, which they claim could take years (if her feet heal at all).[4] Mack, on the other hand, argues that she was entitled to stay for "at least" a few more months because that is how long it would take her to recuperate from the foot surgery Dr. Felsen mentioned in her letter. See R.56 Stmt. ¶ 23. A reasonable jury could conclude that, based on Dr. Felsen's letter, Mack needed a few more months in her apartment. Thus, Mack has established a fact dispute over whether it necessary to have more than a fourteen day extension on the move out date.

The burden then shifts to MHA "to show that the requested accommodation is or was unreasonable." Oras, 373 N.J. Super. at 312. MHA claims that the request for a few more months was unreasonable because her foot issues could last indefinitely. MHA does not explain, however,

---

[4] MHA also claims that Mack requested to stay in her three-bedroom unit permanently. See Def.'s Br. at 16. It is unclear where that allegation comes from. MHA attributes that fact to paragraph 23 of their Rule 56 Statement, but that paragraph states only that Mack "advised Ms. Sargent that the extension was insufficient, and that she needed 'at least' a couple of months to heal completely." R.56 Stmt. ¶ 23.

12

why the specific request for a few more months would be unreasonable. For example, MHA does not explain the costs they would incur by allowing her to holdover, whether she was paying full rent on her three-bedroom unit, whether they could have assisted her in moving sooner, whether other tenants were slated to move into the three-bedroom unit, to name a few. Nor has MHA provided deposition testimony or sworn statements from any employee to explain the unreasonableness of the request. On the record before the Court, it cannot determine as a matter of law that an extension of a few more months was unreasonable.

### C. Requirement of Expert Report for Causation

MHA offers another theory to reject the NJLAD claim. They argue that Mack has not offered expert testimony to support her theory that the denied accommodation caused her to lose her toe, so the NJLAD claim fails. The Court again disagrees.

MHA is correct and Mack must offer expert testimony to establish a causal connection between the lost toe and the denied accommodation, which she has not done. That is because the causal connection that Mack intends to prove requires a complex assessment of her medical injury; such an assessment is beyond a lay person's ken. Montgomery v. Pinchak, 294 F.3d 492, 504 (3d Cir. 2002) (recognizing "the need for expert testimony in proving a claim based on medical injury"). But that fact does not require dismissal of the entire NJLAD claim. Mack has alleged other non-medical damages that would not require expert testimony. In addition to the medical injuries, Mack also alleges non-medical injuries like "financial losses" and "emotional distress," Compl. ¶ 24 & Count V ¶ 8, which may be established in NJLAD claims "without resort to expert testimony," Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 552 (2013) (citing Rendine v. Pantzer, 141 N.J. 292, 312 (1995); Tarr v. Ciasulli, 181 N.J. 70, 81-82 (2004)). As such, the NJLAD claim does not fail for lack of expert testimony.

13

However, as to any treating physician or expert's testimony, the Court will entertain a pre-trial motion in limine to exclude evidence of the amputated toe to the extent required by the Federal Rules of Evidence and the substantive rules regarding causation and damages.

### D. Punitive Damages

The Court does agree with MHA's final argument that punitive damages are unwarranted in this case. Two requirements must be satisfied to award punitive damages under the NJLAD: (1) upper management's actual participation in, or willful indifference to, the wrongful conduct; and (2) evidence that the wrongful conduct is especially egregious. See Cavuoti v. N.J. Transit Corp., 161 N.J. 107, 113 (1999); see also Abbamont v. Piscataway Twp. Board of Education, 138 N.J. 405, 426 (1994) (permitting punitive damages against public entities).

Here, despite MHA's opening argument that punitive damages are inappropriate, Mack has not provided any evidence to establish the two requirements. She has not demonstrated that Sargent was a member of upper management, or provided any evidence of the tasks she performed, which could at least allow the Court to infer her upper management role. Nor is there any evidence that other members of upper management participated in or were indifferent to Mack's situation. Mack has also failed to demonstrate that the conduct was especially egregious in light of the fact that MHA granted Mack an initial extension, and Mack voluntarily chose not to participate in the agency grievance procedure, despite knowing that it was available to her. Even giving Mack every favorable inference, Plaintiff's claims do not rise to a sufficiently egregious level so as to warrant an award of punitive damages against MHA.

## IV. CONCLUSION

For the reasons set forth herein, MHA's motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Judgment is entered in MHA's favor on Counts II (FHA) and

IV (Rehabilitation Act). Counts I (negligence), III (ADA), and VI (intentional infliction of emotional distress) are **DISMISSED**. Count V (NJLAD) survives summary judgment and will proceed to trial.

**Date: May 24, 2017**	*/s Madeline Cox Arleo*
	**Hon. Madeline Cox Arleo**
	**United States District Judge**